# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH SAAL, | ) | CASE NO. 5:18-cv-2744 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| CITY OF WOOSTER, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion for partial judgment on the pleadings filed by defendants City of Wooster ("the City"), Wooster Police Chief Matthew Fisher ("Chief Fisher"), and Assistant Police Chief Scott Rotolo ("Rotolo") (collectively, the "defendants"). (Doc. No. 23, Motion ["Mot."].) Plaintiff Kenneth Saal ("plaintiff" or "Saal") filed an opposition brief (Doc. No. 25, Opposition ["Opp'n"]), and defendants filed a reply (Doc. No. 26, Reply ["Reply"]). For the reasons set forth herein, defendants' motion is GRANTED in part and DENIED in part.

## I. Standard of Review

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Id*. at 581 (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480

(6th Cir. 1973)). The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

In considering a Rule 12(c) motion, the allegations in the pleadings are the Court's primary focus. "The court can also consider: (1) any document attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted).

## II.  Discussion

### A.  Background

The following facts come from Saal's first amended complaint (hereinafter, the "amended complaint") and are accepted as true for purposes of resolving the present motion. Saal was hired by the Wooster Police Department as a patrol officer in August 2001. (Doc. No. 4, First Amended Complaint, ["FAC"] ¶ 8.) Saal enjoyed a 17-year career with the Wooster Police Department, during which time he was promoted to Sergeant (*Id.* ¶ 12), served as a shift supervisor (*Id.* ¶ 14), was selected as "Police Officer of the Year" (*Id.* ¶ 11), and was tasked with supervising and training Field Training Officers ("FTO[s]"). (*Id.* ¶ 14.)

In March 2014, Officer Sue Trepal ("Trepal") was promoted to FTO, becoming the department's first Hispanic female to hold that position. (*Id.* ¶¶ 15, 16.) Within five months, however, Chief Fisher ordered Saal to relieve Trepal of her FTO duties. (*Id.* ¶ 17.) Believing that

Trepal was a very good officer, Saal sent Chief Fisher a letter[1] explaining the many ways he felt that Trepal was being held to a different standard. (*Id.* ¶¶ 18, 20.) The letter concluded "Trepal was scrutinized before she even started field training anyone and it appears that she was never given a chance. She was labeled a failure from the start for no reason." (*Id.* ¶ 20.) Saal's purpose for sending the letter was to "initiate a conversation with the leadership of the Wooster Police Department…." (*Id.* ¶ 21.) But Chief Fisher never responded. (*Id.* ¶ 23.)

Within weeks of sending the letter, Saal began receiving disparate treatment from members of the Wooster Police Department. (*Id.* ¶ 24.) In September 2014, Saal was placed on a Performance Improvement Plan ("PIP") but the harassment and retaliatory conduct continued after he completed the PIP. (*Id.* ¶¶ 25, 27, 28.) Specifically, defendant Rotolo held Saal to a different standard by keeping private notes regarding perceived deficiencies in Saal's job performance. (*Id.* ¶ 29.) On June 16, 2015, Rotolo sent Saal a letter related to alleged job-performance problems and Saal was suspended one month later. (*Id.* ¶¶ 31, 32.) While his suspension was being grieved by the patrolmen's union, Saal was purportedly demoted from his Sergeant position. (*Id.* ¶¶ 33–35.) The grievance was ultimately settled; Saal voluntarily relinquished his position as sergeant in exchange for pecuniary compensation. (*Id.* ¶ 36.) Approximately one year after the settlement, Saal was suspended again, this time for failing to initiate his body camera during an exchange with a citizen. (*Id.* ¶ 38.)

On August 9, 2017—one week after his suspension—Saal assisted the local sheriff's office in the search for the son of another Wooster police officer. (*Id.* ¶ 39.) The search proved

---

[1] In his amended complaint, Saal refers to his July 30, 2014 communication inconsistently, describing it both as an email (FAC ¶ 20) and as a letter (FAC ¶¶ 22–24). The Court has reviewed the communication and it is most accurately described as an email attaching a letter. Because the substance of the communication is included in the attachment, rather than the email, the Court will refer to the communication as a letter.

unsuccessful and, at the conclusion of his shift, Saal briefed Chief Fisher on everything that occurred during the search. (*Id.*) For reasons unclear from the amended complaint, Chief Fisher requested that the Ohio Bureau of Criminal Investigation ("BCI") investigate matters related to the search and, as a result, Saal was placed on administrative leave. (*Id.* ¶ 40.) During their investigation, BCI audited Saal's use of the OHLEG and LEADS computers (*Id.* ¶ 42) and allegedly discovered that searches were conducted, using Saal's login, of 18 of Saal's family members. (*Id.* ¶ 43.) The searches were performed in rapid succession, included both living and deceased relatives, and included several spelling errors. (*Id.*) Based on the audit results, Saal was charged with 18 felony counts of misuse of a law enforcement computer. (*Id.* ¶ 44.) He was subsequently acquitted on all 18 counts. (*Id.* ¶ 46.)

Following the trial, several Wooster City Council members made public statements claiming that Saal was guilty of the felony counts, despite the jury verdict to the contrary. (*Id.* ¶ 47.) Following his acquittal, the police department ordered Saal to return to duty. (*Id.* ¶ 48.) Citing retaliation, Saal refused. (*Id.* ¶ 49.) The City notified Saal that he would be terminated if he did not return to work. (*Id.* ¶ 50.) Nonetheless, Saal explained that he could not return to work for the very people who retaliated against him. (*Id.* ¶¶ 49–50.) He was fired on November 28, 2018. (*Id.* ¶ 51.)

Saal filed his original complaint on November 28, 2018 and filed an amended complaint shortly thereafter. The amended complaint sets forth one federal claim under 42 U.S.C. § 1983 and six claims under Ohio law. In the present motion, defendants move this Court to "grant judgment on the pleadings on [p]laintiff's sole federal claim contained in Amended Complaint Count VI [sic], and to dismiss the remaining state law claims…." (Mot. at 159.) But, at the outset, the Court notes that the precise nature of Saal's sole federal claim—Count IV—is unclear. Captioned as

4

"VIOLATION OF 28 U.S.C. 1983"[2], Count IV asserts a violation of § 1983 based on a "civil, statutory[,] and constitutional right not to be retaliated against for engaging in protected activity under the Civil Rights Act of 1967[3] (sic) and Chapter 4112 of the Ohio Revised Code as well as not to be subjected to malicious prosecution." (FAC ¶ 73.)

While his malicious-prosecution-based § 1983 claim appears relatively straightforward, Saal's retaliation-based claim is far from clear. On the one hand, the amended complaint states that Saal has a "statutory and constitutional right" to be free from retaliation under the Civil Rights Act of 1964. (*Id.*) On the other, Saal states in his opposition brief that he "is not alleging retaliation under Title VII." (Opp'n at 200[4]). One section later, however, Saal asserts that he "engaged in [an] overt[ly] protected activity" under Title VII. (*Id.* at 201.) At this stage, the Court interprets the incongruent pleadings/briefing as Saal alleging—however inartfully—four separate § 1983 theories; (1) malicious prosecution, (2) retaliation in violation of the Constitution, (3) retaliation in violation of the Civil Rights Act of 1964 (Title VII), and (4) retaliation in violation of Ohio State Law. The Court will address each of these theories separately, beginning with Saal's malicious-prosecution-based § 1983 claim.

**B.     Analysis**

    **1.     Saal's Malicious Prosecution Claim**

Saal pleaded sufficient facts to support a malicious prosecution claim. Individuals have a "clearly established right to be free from malicious prosecution." *King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (citing *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015)). As such, the

---

[2] The Court presumes Saal is referring to 42 U.S.C. § 1983.

[3] The Court presumes Saal is referring to the Civil Rights Act of 1964.

[4] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (alteration in original) (citation and quotation marks omitted). A plaintiff pursuing a malicious prosecution claim under § 1983 must prove four elements:

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Hall v. City of Williamsburg*, 768 F. App'x 366, 375 (6th Cir. 2019) (quoting *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014)).

The sole disagreement between the parties relates to element two—whether there was probable cause for Saal's prosecution. Defendants assert that Saal's malicious prosecution claim "fails as a matter of law" because "probable cause was conclusively established by the [g]rand [j]ury [i]ndictments." (Mot. at 165–66.) But that is not the law in the Sixth Circuit. The mere existence of a grand jury indictment does not irrefutably establish probable cause. *See Allen v. Rucker*, 304 F. Supp. 3d 638, 643 (E.D. Ky. 2018) (noting that the existence of a grand jury indictment does not "shield[] officers from all malicious prosecution claims"); *see also Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) ("The existence of an indictment is … not a talisman that always wards off a malicious prosecution claim."). Instead, a grand jury indictment creates a *presumption* of probable cause. *Allen*, 304 F. Supp. 3d at 643 (citing *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). Plaintiffs indicted by a grand jury may rebut this presumption, however, by showing:

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and

6

> evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury)….

*King*, 852 F.3d at 587–88.

In other words, a plaintiff may pursue a malicious prosecution claim against an officer who sets a prosecution in motion by fabricating evidence, so long as the false evidence does not consist entirely of his or her grand jury testimony. *See id.* at 590 ("[E]vidence of an officer's actions prior to and independent of his grand-jury testimony may call into question the presumption of probable cause created by an indictment…."); *see also Mills*, 869 F.3d at 480 ("[P]re-indictment nontestimonial acts that [are] material to the prosecution of a plaintiff [can] rebut the presumption of probable cause established by a grand-jury indictment.") (citation omitted).

Therefore, to state a claim for malicious prosecution under § 1983 after an indictment has been issued, "a plaintiff must plead specific facts showing a defendant-officer made false statements or fabricated evidence that set the prosecution in motion." *Allen*, 304 F. Supp. 3d at 645. While "bare declaration[s] of impropriety" are insufficient, *Bickerstaff v. Lucarelli*, 830 F.3d 388, 398 (6th Cir. 2016), a plaintiff may rebut probable cause by "tell[ing] the court what *particular* evidence was fabricated…." *Allen*, 304 F. Supp. 3d at 646 (emphasis in original).

Here, drawing all inferences in Saal's favor, the amended complaint plausibly states a claim for malicious prosecution. Reading the amended complaint as a whole, it is clear what Saal is inferring—that the BCI investigation was a mere pretext. (FAC ¶¶ 40–42.) Defendant Rotolo and/or Chief Fisher knew that BCI's investigation would include an audit of Saal's OHLEG and LEADS computer logs. (*Id.* ¶ 42.) So they, or someone at their direction, used Saal's OHLEG login information to perform searches of his living and deceased relatives but, due the rapidity

with which the searches were conducted, they made several spelling errors. (*Id.* ¶ 43.) If true, this falsified evidence certainly set the prosecution in motion; indeed, it provided the basis for Saal's prosecution. (*Id.* ¶ 44.) At this stage, Saal has pleaded sufficient facts to support a malicious prosecution claim under § 1983.

### 2. Saal's Retaliation Claims

As mentioned above, Saal's retaliation-based claim is rather unstructured. He appears to be asserting three theories entitling him to relief under § 1983—(1) retaliation that violated his "constitutional right[s]," (2) retaliation in violation of the "Civil Rights Act of 196[4]," and (3) retaliation in violation of Ohio state law. (FAC ¶ 73.) The Court will address that latter two theories first.

#### a) Retaliation Based on a Violation of State Law

To the extent Saal is predicating his § 1983 claim on a violation of "Chapter 4112 of the Ohio Revised Code" (FAC ¶ 73), defendants are entitled to judgment on the pleadings. It is well established that "a mere violation of … state law will not establish a proper claim under § 1983." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *see also Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) ("It has long been established that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983."); *Dieterlen v. Ky. Dep't. of Corr.*, No. 2:13-26-DLB, 2013 WL 3994835, at *2 (E.D. Ky. Aug. 5, 2013) ("Violations of state law are not cognizable under 42 U.S.C. § 1983, which provides redress for denial of federally protected civil rights.") (alteration removed).

In opposition, Saal argues that his § 1983 claim is premised on "violations of both [s]tate and [f]ederal law[]" and, therefore, his claim must stand. (Opp'n at 199.) In support of this argument, plaintiff cites *Birch v. Cuyahoga Cty. Prob. Court*, 392 F.3d 151 (6th Cir. 2004) and

8

*Fernandez v. City of Pataskala*, No. 2:05-CV-75, 2006 WL 3257389, at *4 (S.D. Ohio Nov. 9, 2006). But neither case supports the proposition that a violation of state law can provide the basis for a § 1983 claim. Instead, these cases address the interplay between two federal laws—Title VII and § 1983—and conclude that, although *Day v. Wayne Cty. Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984) held that "Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII[,]" where an employee alleges a Title VII violation and an entirely separate § 1983 claim based on a constitutional violation, the employee may pursue both claims. These cases do not stand for the proposition, as Saal argues, that a § 1983 claim can be premised on either a violation of federal law or a violation of state law. Therefore, to the extent Saal is relying on a violation of Ohio Rev. Code § 4112 to support his § 1983 claim, it is both redundant of Count I and insufficient to support such a claim; and defendants are entitled to judgment on the pleadings.

### b) Retaliation Based on a Violation of Title VII

Saal's next theory of § 1983 liability is based on defendants' alleged retaliatory conduct in violation of the Civil Rights Act of 1964. (FAC ¶ 73.) For reasons similar to those regarding Saal's state-law-based theory, this theory also fails. In the Sixth Circuit, as already noted, "Title VII provides the exclusive remedy when [a plaintiff's] only § 1983 cause of action is based on a violation of Title VII." *Day*, 749 F.2d at 1204. Indeed, Congress did not intend for plaintiffs to "by-pass all of the administrative processes of Title VII and go directly to court under § 1983." *Id.* Again, upon a proper showing, Saal was permitted to bring a Title VII claim *and a separate* constitutional-based § 1983 claim, but he is not permitted to use the former as a basis for the latter. *See Fernandez*, 2006 WL 3257389, at *4. To the extent he is attempting to do so here, defendants are entitled to judgment on the pleadings.

### c) Retaliation Based on a Constitutional Violation

Saal's final theory for relief under § 1983 is based on a violation of his constitutional rights. (FAC ¶¶ 73, 75.) While the amended complaint does not specify which of his rights were allegedly violated, in his opposition brief Saal clarifies that the alleged retaliation violated his "First Amendment and Equal Protection Rights…." (Opp'n at 200.)

As an initial matter, Saal's equal protection argument must fail because "no clearly established right exists under the equal protection clause to be free from retaliation." *Ratliff v. DeKalb Cty.*, 62 F.3d 338, 340 (11th Cir. 1995) (emphasis removed); *Thibert v. City of Oregon*, No. 3:08 CV 2431, 2010 WL 11678500, at *2 (N.D. Ohio July 21, 2010) ("[T]he Equal Protection Clause does not support retaliation claims.") (citing cases, including *Ratliff*, *supra*); *Strouss v. Mich. Dep't of Corr.*, 75 F. Supp. 2d 711, 734 (E.D. Mich. 1999) ("[T]he great weight of authority demonstrates that no equal protection claim will lie for retaliation….").

In his final bite at the apple, Saal alleges—for the first time in his response briefing—First Amendment retaliation. (*See* Opp'n at 200.) "'It is well-settled that a plaintiff may not expand its claims to assert new theories in response to summary judgment . . . .'" *Vonderhaar v. Wymire*, __ F. App'x __, 2020 WL 238280, at *7 (6th Cir. Jan. 15, 2020) (quoting *Renner v. Ford Motor Co.*, 516 F. App'x 498, 504 (6th Cir. 2013) (further citation omitted)). But even if plaintiff had properly amended his complaint, this claim would not survive the motion.

To establish a prima facie case of First Amendment retaliation, Saal must show three elements: "first, that [he] engaged in constitutionally protected speech or conduct; second that [defendants] took an adverse action against [him] that would deter a person of ordinary firmness from continuing to engage in that speech; and third, that a causal connection exists between the

10

protected speech and the adverse employment action." *Buddenberg v. Weisdack*, 939 F.3d 732, 739 (6th Cir. 2019) (citing *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014)).

It is the first element—constitutionally-protected speech—that dooms Saal's argument. To determine whether a public employee's speech is protected, the Court engages in a three-step inquiry: (1) whether the speech addressed a matter of public concern; (2) whether the employee spoke as a private citizen or as an employee pursuant to his official duties; and (3) whether the employee's speech interest outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (internal citations and quotation marks omitted). Whether speech is constitutionally protected is a purely legal question for the Court to decide. *Fox v. Traverse City Area Pub. Sch. Bd. Of Educ.*, 605 F.3d 345, 350–51 (6th Cir. 2010) (citations omitted).

"'Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Buddenberg*, 939 F.3d at 739 (quoting *Lane v. Franks*, 573 U.S. 228, 241, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014)). The speech at issue here is, presumably, the letter that Saal sent to Chief Fisher after Officer Trepal was relieved of her FTO duties. The letter purports to "explain[] the many ways in which [Saal] felt that [Officer] Trepal had been held to a different standard." (FAC ¶¶ 17, 20.) The letter was attached to defendants' answer, it was mentioned in Saal's

amended complaint, and is central to his claims therein. Thus, the Court may consider the letter's contents without converting this motion to one for summary judgment.[5]

The Sixth Circuit has found that speech addresses a matter of public concern when it alleges discrimination. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 182 (6th Cir. 2008). But the letter at issue does not allege discrimination. The letter relates exclusively to work-related incidents involving Officer Trepal. (*See* Doc. No. 9-3 at 85–86.) Saal expressed his "disappoint[ment]" in Chief Fisher's decision to relieve Officer Trepal of her FTO duties and outlined the reasons he thought the decision was misguided, because it was "based *solely* on … lack of facts." (*Id.* at 85 (emphasis added).) Nowhere does Saal oppose Chief Fisher's decision because it was based on discrimination; instead, he opposed the decision because"[Chief Fisher] didn't have all the facts." (*Id.* at 87.) The letter makes no mention of discrimination. Nor does it mention Officer Trepal's race or gender. In fact, contrary to the allegations in the amended complaint, the letter does not indicate that "Trepal had been held to a different standard." (*See* FAC ¶ 20.) There is absolutely no indication that Trepal was treated differently than her male counterparts under similar circumstances. True, the final two sentences of the letter indicate that Saal "believe[d] … Trepal was … never given a chance … [and] was labeled a failure from the start for no reason." (*See* Doc. No. 9-3 at 87.) But these vague assertions (1) do not allege Trepal was discriminated against and (2) do not nullify the letter's previous two pages that focus

---

[5] In ruling on a motion to dismiss under Fed. R. Civ. P. 12 (and, therefore, on a motion for judgment on the pleadings), a court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

exclusively on Officer Trepal's job performance. Saal failed to allege he engaged in speech on a matter of public concern.

Even assuming *arguendo* that the letter's ambiguous conclusion could somehow be construed as alleging discrimination, Saal has failed to establish element two—that he was speaking as a private citizen and not pursuant to his official duties. The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 573 U.S. at 240. The Sixth Circuit recognizes, however, that *ad hoc* or *de facto* speech not appearing in any written job description can be considered to have been made "pursuant to official job duties" if the speech "owes its existence to [the speaker's] professional responsibilities." *Weisbarth v. Geauga Park Dist.* 499 F.3d 538, 544 (6th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 421).

Though it is unlikely that drafting this particular letter was set out in Saal's job description, the letter's content makes clear that it owes its existence to Saal's professional duties. As mentioned above, the letter relates primarily to Officer Trepal's on-the-job incidents. The letter was sent from Saal's city-provided email address, to Chief Fisher's official email address. (*See* Doc. No. 9-3 at 84.) Saal sent the letter as someone who "worked with … Trepal for several years and [who] supervised her for two." (*Id.* at 87.) And the letter was signed "Sgt. Kenneth R. Saal[.]" (*Id.*) This is not a case where Saal, as a citizen, was attempting to address corruption or widespread discrimination within the police department. Rather, Saal drafted this letter to his superior—as

13

Trepal's supervisor—questioning the prudence of Chief Fisher's decision. There can be no doubt that Saal drafted his letter pursuant to his official duties. As such, Saal's letter is not protected speech under the First Amendment. Defendants are entitled to judgment on the pleadings with regard to Saal's First Amendment retaliation claim.

### 3. Municipal Liability for the City

Having determined that Saal has sufficiently alleged a malicious prosecution claim under § 1983, the Court must decide whether any liability is attributable to the City. Unlike states, municipalities and local governments are considered "persons" who can be sued directly under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). But a municipality may not be held liable for an employee's conduct on the basis of *respondeat superior*. *Id.* at 691. Instead, a plaintiff must show that the government entity, itself, was the wrongdoer. *Collins v. City of Harker Heights*, 503 U.S. 115, 122, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992). To make this showing, a plaintiff must demonstrate that a municipality's policy, or its tolerance of a custom, caused the constitutional deprivation. *Id.* Thus, Saal must allege that (1) his constitutional rights were violated and (2) the City is responsible for the violation. *Graham v. Cty. of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004) (citation omitted). The City is responsible if the policy or custom in question was the "moving force" of the constitutional violation. *Monell*, 436 U.S. at 694.

Defendants argue that Saal's claims against the City fail because any alleged constitutional violations were not the result of the City's policy or custom. (Mot. at 166–68.) Saal acknowledges that he "did not explicitly allege that he was harmed as a result of an official policy[,]" but claims that an official policy was established when "officials with final decision-making authority ratified illegal actions as well as tolerated federal rights violations." (Opp'n at

198.) Saal is correct that singular acts taken by government actors may be considered acts taken pursuant to official government policy, but "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). Governmental liability only attaches when "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.*

Having already determined that Saal's sole cognizable § 1983 theory is based on malicious prosecution, the unlawful actions at issue relate to the defendants' alleged malicious prosecution of Saal. The question then becomes, was one or more of the defendants a final decisionmaker in matters related to Saal's prosecution? The prosecution at issue was set in motion when Chief Fisher made an unprecedented referral of Saal's August 9, 2019 search to BCI. (FAC ¶¶ 40, 41.) Defendants knew that by referring the case to BCI, Saal's OHLEG and LEADS computer searches would be audited. (*Id.* ¶ 42.) The audit revealed that someone searched 18 of Saal's living and deceased relatives—some with spelling errors—through the law enforcement database. (*Id.* ¶ 43.) Based on the results of the audit, "the City of Wooster brought charges against Saal for 18 felony counts of misuse of a law enforcement computer." (*Id.* ¶ 44.)

Courts have held that chiefs of police "possess[] final authority in the discharge of [their] duties, and, thus, any decisions made in the course of discharging [those] duties constitutes [municipal] policy…." *Culberson v. Doan*, 125 F. Supp. 2d 252, 275 (S.D. Ohio 2000); *see also Hubbard v. City of Middletown*, 782 F. Supp. 1573, 1579 (S.D. Ohio 1990) (holding that a police chief had final policy-making authority regarding sexual harassment and public contact); *Silva v. Hollis*, No. 3:08CV2589, 2009 WL 1270297, at *3 (N.D. Ohio May 5, 2009) (finding that police chief was final decisionmaker when directing other officers to act); *Brunner v. McKillip*, 488 F.

Supp. 2d 775, 780 (W.D. Wis. 2007) (finding that chief of police had final decision-making authority "with respect to all village law enforcement decisions"). However, in determining whether a municipal employee qualifies as a final decisionmaker, courts look to state law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124–25, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988), as well as "local ordinances, regulations, charters, practices, and customs." *Silva*, 2009 WL 1270297, at *2 (citing cases).

Unfortunately, neither party has briefed whether Chief Fisher, or any other defendant, was a final decisionmaker in matters related to Saal's prosecution. At this time, the Court is satisfied that the amended complaint contains sufficient facts, accepted as true, to state a plausible claim of municipal liability. Whether Chief Fisher, or another defendant, did in fact have final authority with respect to Saal's prosecution, involves factual issues that are not before the Court at this time. *See Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 630 (W.D. Mich. 2015) (denying municipality's motion to dismiss when it was unclear whether police chief was final decisionmaker) As such, defendants' motion for judgments on the pleadings regarding Saal's § 1983 claim against the City is denied.

### 4. Title VII Violation

Defendants argue that Saal fails to make a prima facie showing of retaliation under Title VII. This argument is superfluous, however, because Saal did not plead an independent Title VII retaliation claim. Indeed, Saal acknowledges he "is not alleging retaliation under Title VII." (Opp'n at 200.) In fact, the term "Title VII" is conspicuously absent from the amended complaint. And the only mention of the Civil Rights Act of 1964, is provided in support for Saal's § 1983 violation. (FAC ¶ 73.) It is clear, both from the plain reading of the amended complaint and from

16

civil cover sheet[6] appended to the original complaint, that Saal's sole federal claim is based on § 1983, not Title VII. The fact that the parties pay homage to a Title VII cause of action in their briefing to this motion, does not change the fact that Saal did not plead such a cause of action and the Court will not conjure one *ex nihilo*. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.").

### III. Conclusion

For the reasons set forth herein, defendants' motion for judgment on the pleadings is GRANTED related to Saal's retaliation-based § 1983 claim and DENIED related to Saal's malicious-prosecution-based § 1983 claim.

**IT IS SO ORDERED**.

Dated: February 20, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[6] In the cause of action section, Saal indicates that he brings this action pursuant to "[42] U.S.C. 1983." (Doc. No. 1-1 at 16.)